# VANCE

### *v.*

## COMMONWEALTH.

*(Supreme Court of Appeals of Virginia, June 19, 1894.)*

[19 S. E. Rep. 785.]

### Criminal Law—Murder in Second Degree—Case at Bar.

The plaintiff in error, V., with three others, went to the house of L., the deceased, and began a frolic, to which L. objected, and a row ensued, and finally L. was driven away from his home for the night. V.'s party next morning returned to the house, and soon L. approached, with two others. As L. came up, V. said to L., "You struck me last night, and I am going to kill you." L. said, "Well, then, kill me then." V. told L. to come to his knees, and immediately began firing at him, and L. threw rocks at V., and knocked him down, whereupon V. shot L., who fell down, and while he was down V. crushed his skull with a rock: *held*, that a verdict of murder in the second degree was proper.

### Evidence—Character of Witnesses.

Evidence of bad conduct on the part of the state's witnesses, that a warrant had been issued for their arrest for petit larceny, and that deceased and his wife kept a house of ill fame, was properly excluded.

### Presumption Where There Is a Killing—On Whom Burden to Lower.

Where a murder is, by the laws of presumption, one of the second degree, the burden of proof is on the defendant to lower the grade of the crime.

Error to circuit court, Tazewell county ; S. W. Williams, Judge.

Rees Vance was found guilty of murder in the second degree, and brings error. Affirmed.

*Henry & Graham*, for plaintiff in error.

*R. Taylor Scott, Atty. Gen.*, for the Commonwealth.

LACY, J., delivered the opinion of the court.

This was a writ of error to a judgment of the circuit court of Tazewell county, rendered on the 22d day of December, 1893, refusing a writ of error to a judgment of the county court of said county, rendered on the 26th day of September, 1893, by which the plaintiff in error was adjudged guilty of murder in the second degree, and sentenced to the penitentiary for a term of 18 years.    The case is substantially as follows :    One Sunday evening, in February, 1890, the plaintiff in error, Rees Vance, with three other men, went to the house of the deceased, Buck Lawson, in the search, as is asserted by the said Vance, for lewd women.    Not finding them, they began a sort of frolic, the said Vance calling on one of the party to blow a tune on what he called a French harp.    The music commencing, Vance began to dance.    The deceased objected to dancing in his house Sunday evening, and got up and started towards the door, whereupon a row commenced.    Somebody threw a cup at deceased, and deceased threw a rock from the outside into the house, and struck the plaintiff in error on the jaw, and knocked him down, whereupon one of the party, Jim Vance, who had come with the plaintiff in error, jumped up from out of the door, and shot at the deceased, with a pistol, several times.    Deceased escaped by flight under cover of the night, and did not return ; but the party, including his wife and children, left the house, because afraid of fire being applied by the deceased, and went to a neighbor's house, where they all spent the night. Next morning this party returned to the house.    Very soon the deceased was seen coming, with two persons with him. As the deceased approached his house, Rees and Jim Vance were standing in the door.    Rees Vance said to the deceased,

"You are the person who struck me with a rock last night [with oaths], and I am going to kill you for it." Deceased replied, "Well, then, kill me, then." The plaintiff said, "Come down to your knees." The plaintiff in error immediately began to shoot at him, and the deceased to throw rocks. The plaintiff in error was knocked down by one of these, whereupon he ran out of the house by the other door, Jim Vance going with him, and ran around the house. The deceased coming to meet him, or coming the same way, they did meet, and the plaintiff in error shot deceased, and he fell, and as he laid on the ground the plaintiff in error seized a large rock, and, standing over him, broke his skull. From the effects of the blow with the rock the deceased died, the pistol-shot wound proving to be only a slight flesh wound. Upon his conviction of murder in the second degree, the plaintiff in error, having filed some exceptions to the rulings of the trial judge, moved to set aside the verdict, and grant him a new trial, on account of misdirection by the court at the trial, and because the same was contrary to the law and the evidence ; which, being overruled, he applied for a writ of error to the circuit court, by which court it was refused, whereupon the case was brought to this court by a writ of error.

The plaintiff in error sought to exclude the witnesses for the commonwealth because of their alleged bad character, and sought to introduce evidence of bad conduct on their part, and also sought to introduce evidence of the fact that a warrant had been issued for their arrest under the charge of petit larceny, and also to prove that deceased and his wife kept a house of ill fame, and that the wife of the deceased was a lewd woman ; all of which the court excluded. The court did not err in any of this. Admit the facts, and they gave the plaintiff in error no warrant to take the life of the deceased. The motion to set aside the verdict was properly overruled. The killing was after cooling time and

much deliberation. If the death wound had been inflicted with the teacups, in a sudden heat, without malice, it would have been a different case. The accused drove the deceased from his home, at night. After the night had passed, in the morning, he returned to the attack, and, entering the deceased's house in his absence, stood in the doorway, and barred his approach with a pistol, and threatened to kill him; and, upon the refusal of the deceased to come down to his knees before him, he shot him down. If he had stopped there, a life would have been spared; but as he lay upon the ground he stood over him with a rock, and killed him with the rock. The homicide was murder in the second degree by the laws of presumption, and, in the opinion of the jury, the commonwealth did not successfully bear the burden of raising it to the degree of murder in the first degree. But the burden of proof was on the defendant to lower the grade below murder in the second degree; and I perceive nothing in the transcript of the record before us which tends in any degree to lower the grade of the crime below murder in the second degree, and we must affirm the judgment of the lower court.